(No. 25448.—

EMANUEL E. LARSON *et al.* Appellees, *vs.* THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA *et al.*—(THE PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant.)

*Opinion filed April 17, 1940—Rehearing denied June 5, 1940.*

TAYLOR, MILLER, BUSCH & BOYDEN, (FRANCIS X. BUSCH, ORVILLE J. TAYLOR, and WHITNEY CAMPBELL, of counsel,) for appellant.

CHARLES M. HAFT, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal and cross-appeal from a decree of the superior court of Cook county entered in a case instituted by Emanuel E. Larson and Thomas B. Freeman, hereinafter referred to as plaintiffs, against the Pacific Mutual Life Insurance Company of California, the Chicago Title and Trust Company, the North Shore Golf Club, and the Pacific Mutual Life Insurance Company. The Pacific Mutual Life Insurance Company of California, (called the old company,) was chartered under the laws of California and, in 1936, the Insurance Commissioner of that State, pursuant to the Insurance Code, declared it to be insolvent. The commissioner filed a petition in the superior court of California to obtain judicial approval of his actions in taking control of the assets and business of the old company. The commissioner proposed a plan of rehabilitation and reinsurance, which included the organization of a new corporation known as the Pacific Mutual Life Insurance Company, hereinafter referred to as the new company. After certain preliminary court proceedings the commissioner submitted the plan to the court for its approval. After a hearing, the plan proposed by the commissioner was approved by the

court and, according to its terms, the old company became the owner of all the stock of the new company, and the latter company became the owner of all the principal assets of the old company, and assumed a large percentage of the contractural obligations of the old company. Included in the assets was a note executed by the defendant the North Shore Golf Club, a corporation, for $250,000, which was secured by trust deed on its real estate located in Cook county. The Chicago Title and Trust Company was named trustee therein. Several years prior to the insolvency and reorganization proceedings, each of the plaintiffs purchased a health and accident non-cancellable policy from the old company. The gist of this action was to enforce whatever rights plaintiffs have under their respective policies, and, being residents of this State, they claimed the right to have the property of the old corporation, which is in this State, applied to the satisfaction of their claims before any of it is delivered to either of the insurance companies, and to that end they prayed for a temporary injunction and restraining order against the defendants enjoining the insurance companies from receiving, and the golf club and the Chicago Title and Trust Company from paying over, any of the principal or interest on said mortgage indebtedness. A temporary injunction and restraining order was issued as prayed. The complaint was amended and the Insurance Commissioner of California was made a defendant. The insurance companies each moved to dissolve the temporary injunction and restraining order and to dismiss the amended complaint. Affidavits were filed setting forth many facts which did not appear in the complaint. On a hearing the temporary injunction was dissolved, the amended complaint dismissed for want of equity, and the new company ordered to reinstate plaintiffs' policies pursuant to the terms and conditions of the rehabilitation and reinsurance agreement. As a condition to the dissolution of the temporary injunc-

tion and restraining order, the new company was required to furnish a bond in the sum of $21,000 conditioned upon the reinstatement of plaintiffs' policies. The new company appealed from that part of the decree which required the reinstatement of plaintiffs' policies and the filing of a bond. Plaintiffs cross-appealed from that part of the decree which dissolved the temporary injunction and restraining order and dismissed the amended complaint. Constitutional questions being raised, the appeal was direct to this court.

The principal question arises on the cross-appeal from that part of the decree which dismisses the amended complaint for want of equity. The facts, as disclosed from the pleadings are: The old company was organized in 1868 and for some time prior to the insolvency proceedings in July, 1936, was engaged in writing three kinds of insurance,—life contracts, combined life and health contracts, and non-cancellable accident and health contracts. The business written on the life contracts and the combined life and health contracts proved profitable, while the business transacted on the non-cancellable accident and health contracts was not profitable. According to a survey made by the Insurance Commissioner of California in 1936, the liabilities incurred on the non-cancellable accident and health contracts (hereinafter called non-can contracts) made the old company, as a whole, insolvent, as that word was defined in the Insurance Code of that State. Pursuant to the provisions of the Insurance Code, the Insurance Commissioner thereupon took control of the assets and business of the old company and filed a petition in the superior court of that State asking the court's approval of a plan of rehabilitation and reinsurance. A date for a hearing was fixed and notice prescribed. Each policyholder and stockholder of the old company appearing upon the books of the company on July 22, 1936, was ordered to be notified by mailing a notice specifying the time, place and the pur-

pose of the hearing. Neither of the plaintiffs was served with process in California, and plaintiff Freeman was the only one to receive the notice prescribed by the court order. On the date of hearing, several hundred policyholders appeared either in person or by counsel and filed intervening petitions. More than thirty of the intervening petitions were filed by persons owning non-can policies, some of them holding policies of the same premium class as plaintiffs and having identical rights. The plan proposed by the Insurance Commissioner was approved and, on appeal, was affirmed by the Supreme Court of California. *Carpenter Insurance Com'r* v. *Pacific Mutual Life Ins. Co. of California,* 10 Cal. (2d) 307, 74 Pac. (2d) 761.

It is not necessary to set forth, in detail, the provisions of the rehabilitation and reinsurance agreement. The plan proposed involved the oragnization of the defendant Pacific Mutual Life Insurance Company, the transfer to it of practically all the assets of the old company, the reinsurance by the new company of all the outstanding policies of the old company at the existing premium rates and without diminution of benefits, except that the non-can policies benefits were reduced in varying percentages according to the age of the respective policies. No policyholder was required to accept reinsurance in the new company but he had the right to rely on his old policy and receive a *pro rata* distribution of the assets of the old company when liquidated by the Insurance Commissioner. Holders of life policies and combined life and health policies could be reinsured in the new company at the same premium rate and without any impairment of policy value or provisions whatever. If a non-can policyholder accepted reinsurance with the new company the premium rate was to remain the same as in the past, but the benefits under the policy of reinsurance were less than the corresponding benefits under the policy issued by the old company. The scaling down was pro-

portional and ranged from twenty per cent to ninety per cent of previous coverage. The effect of the Insurance Commissioner's proceedings was to separate the profitable business from the unprofitable and to require the unprofitable business to bear the losses accrued and to accrue. The deficit ascribed to the non-can policies was $23,000,000. The actual liability as of July 1, 1936, on those policies was $20,000,000, plus a future liability thereon of $25,000,000. There was only $20,000,000 of reserves to meet this liability. The business, as a whole, of the old company at the end of the year of 1935 showed liabilities exceeded assets by $18,000,000. From these figures it is apparent that the financial losses were caused by the issuance of the non-can policies.

The appeal to the Supreme Court of California was taken by four policyholders, three of them being holders of non-can policies of the same type as those held by plaintiffs. In the trial court it was urged by the intervening policyholders that the plan of rehabilitation and reinsurance advanced by the Insurance Commissioner under and pursuant to the Insurance Code of California was invalid because certain provisions of the code authorized a procedure which violated the due process, equal protection of the law and the contract clauses of the Federal constitution. The same objections were urged on appeal, but the Supreme Court sustained the procedure carried on under the code and held the commissioner was authorized, under the reinsurance provisions of the law, to organize a new company and transfer practically all the assets of the old company thereto, in consideration of the new company assuming some of the obligations of the old company. In sustaining the validity of the statute, it was held that the business of insurance in California was affected with a public interest and the State had a vital and important interest in the liquidation or reorganization of such business. That neither

the insurance company, nor a policyholder thereof, possessed inviolate rights that characterized private contracts, and the contract of a policyholder was subject to the reasonable exercise of the State's police power. It was held that the exercise of that right in respect to such a contract must be reasonably related to public interest and not be used in an arbitrary manner or be improperly discriminatory. It was held the old company was without power to change the non-cancellable features of the non-can policy but the State, in the exercise of its police power as defined in the Insurance Code, could authorize the Insurance Commissioner to make provision for reinsurance, subject however, to the right of the policyholder to elect between reinsurance under the plan proposed or acceptance of damages for breach of contract, the same to be paid through liquidation of the old company.

The policyholders who perfected the appeal to the Supreme Court of California petitioned the Supreme Court of the United States and obtained a review of the case in that court. (*Neblett* v. *Carpenter Insurance Com'r,* 305 U. S. 297, 83 L. ed. 182.) The policyholders contended that the method of liquidation adopted by the commissioner and approved by the courts, even though authorized by the Insurance Code, denied them due process and impaired the obligations of their policy contracts. The court noted the right of election reserved to each policyholder and held that the plan and procedure carried on under the Insurance Code of California was not in violation of the due process clause. In answer to the contention that there was impairment of contract, the court said: "It is not contended that a statutory scheme for the liquidation of an insolvent domestic corporation is *per se* an impairment of the obligation of the company's contracts. The argument is that the impairment of contract arises from the less favorable terms and conditions of the new non-cancellable

policies which are to be substituted for the old ones and, in the case of the life policies, by the substitution of a new company as contractor in place of the old, without the consent of the policyholder. This position is bottomed upon the theory that the policyholders are compelled to accept the new company as insurer on the terms set out in the rehabilitation agreement. As has been pointed out, they are not so compelled, but are given the option of a liquidation which, on this record, appears as favorable to them as that which would result from the sale of the assets and *pro rata* distribution in solution of all resulting claims for breach of outstanding policies."

On this appeal plaintiffs say the questions presented and decided by the Supreme Court of California and the Supreme Court of the United States in reference to the due process and contract clauses of the Federal constitution are not binding on them. The theory advanced is that since the plaintiffs were not personally served and did not appear in the court of California, that court was without jurisdiction over them. In reply it is contended that the doctrine of class representation applies. As noted, several of the intervenors in the court proceedings in California were holders of non-can policies identical, as to rights, with plaintiffs' policies.

In the opinion of the Supreme Court of California (74 Pac. (2d) 775) it is stated: "Section 1057 [Insurance Code] makes the commissioner in all proceedings under the provisions of the code, the trustee for the benefit of all creditors and other interested parties." Class representation in suits is authorized by section 382 of the Code of Civil Procedure of California, for it provides, "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." The factual situation

on this point is that at the time of the beginning of the insolvency proceeding, the old company was transacting business in forty-three States. There were about 200,000 persons holding life policies, 75,000 holding accident and health policies, of which 50,000 were non-can policies.

In *Smith* v. *Swormstedt,* 16 Howard, 288, 14 L. ed. 942, it was said: "The rule is well established, that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be maintained against a portion of a numerous body of defendants, representing a common interest."

This rule has been applied to facts and issues so similar to those in this case that the following cases are decisive of the question: *Hartford Life Ins. Co.* v. *Ibs,* 237 U. S. 662, 59 L. ed. 1165; *Hartford Life Ins. Co.* v. *Barber,* 245 id. 146, 62 L. ed. 208; *Royal Arcanum* v. *Green,* 237 id. 531, 59 L. ed. 1089. In *Taylor* v. *Pacific Mutual Life Ins. Co.* 214 N. C. 770, 200 S. E. 882, a non-can policyholder brought suit against the new company to recover premiums he had paid. He had not been served with process in the California proceedings but the company pleaded such proceedings in bar. The Supreme Court of North Carolina held the doctrine of class representation applicable and the plaintiff bound by the California proceedings.

Under the authorities cited, we conclude that the doctrine of class representation applies. Under the California proceedings plaintiffs' policy rights were by right of election between the acceptance of a policy issued by the new company under the terms of the rehabilitation agreement and the acceptance of payment of damages through liquidation. The Supreme Court of California answered the contention that all the assets of the old company had been conveyed to the new by saying: "The record shows the contrary. It discloses that as trustee for all creditors of the

old company, including dissenters, the commissioner holds all of the stock of the new company, the agreement of the new company to pay him certain sums equivalent to the reservations established on the policies whose owners dissent, and the agreement of the new company to pay over to him for the benefit of all creditors of the old company portions of its future earnings. There is nothing in the judgment roll to indicate the value of these assets. The record is also silent as to what the policyholders would have received in liquidation. * * * The order appealed from contains a recital that adequate provision is made in the plan for every class of policyholder. We must assume that such recital was amply supported by evidence."

Plaintiffs also urge that the proceedings in California should not be given full faith and credit for the reason that it would contravene the public policy of this State that the claims of local creditors shall be satisfied from the local assets of a non-resident insolvent insurance corporation before any of such assets shall be paid to the liquidator appointed in the State of domicile.

In *Clark* v. *Willard*, 292 U. S. 112, 78 L. ed. 1160, it was held that if one State has a public policy which permits a preferential payment to the local creditors of an insolvent insurance company, then the title of the liquidators appointed in the State of domicile is, as to the property in the other State, subordinated to the claims of the resident creditors of the latter State. If the public policy of the State be the opposite, then, as a necessary corollary, it would follow that the State courts must, under the full faith and credit clause, accord superiority of title to the statutory liquidator appointed in the State of domicile.

The public policy of this State on this question has been prescribed by legislative enactment. In section 197 of the Insurance Code of 1937 (Ill. Rev. Stat. 1939, chap. 73, par. 809) provision is made for the director of insurance

to file a petition against foreign companies under certain specified conditions and procure a rule upon the foreign company to show cause why the director should not take possession of its assets in this State and conserve the same for the benefit of its creditors and for such other relief as the nature of the company and the interests of its policy-holders, creditors, members, stockholders or the public may require, and sub-paragraph 4 of said section provides that the rights, powers and duties of the director of such conservator shall be ancillary to the rights, powers and duties imposed upon the receiver in charge of property of the company in the domiciliary State. Other sections make provision for a liquidation between States where there are reciprocal Insurance codes. There is no provision in any of the sections of the code which authorizes a preferential payment to a local creditor out of the property located in this State.

Plaintiffs' suit was filed in October, 1936. Section 6, as amended in 1929, of an act entitled "an act in relation to delinquent insurance companies" was then in force. (Smith-Hurd Stat. 1931, chap. 73, par. 500.) It provides that whenever a non-resident insurance company authorized and having assets in this State had been placed in the hands of a receiver in the domiciliary State, that the director should report the case to the Attorney General of this State and he should make application to the circuit court of the county in which the principal office of such non-resident company was located for a rule upon such non-resident company to show cause why a receiver should not be appointed in Illinois to take possession and conserve the assets in Illinois for the benefit of its creditors.

The application of these various statutory provisions requires that the full faith and credit clause of the Federal constitution be given effect in this case. The court ruled correctly in dissolving the temporary injunction and restraining order and dismissing the amended complaint.

Having held plaintiffs are bound by the court proceedings of California and that such proceedings must be given full faith and credit, it follows that the questions presented on the appeal by the new company are already answered. The rehabilitation and reinsurance agreement approved in those proceedings left plaintiffs the election of two remedies; one through the liquidation proceedings of the old company, the other by acceptance of reinsurance with the new company. The amended complaint was not based upon the premise that they had made an election and were seeking to enforce it, but was founded on the theory that the California proceedings and the rehabilitation contract were not binding on them and they had a right to establish contractual rights different from those provided by the California proceedings. They did not ask for the right of reinsurance and the court erred in decreeing that the new company should give plaintiffs the privilege of reinsurance upon payment of the premium and in exacting a bond for the faithful performance of such requirement.

For the reasons stated, that part of the decree of the superior court which dissolves the temporary injunction and restraining order and dismisses the amended complaint for want of equity is affirmed, and that part which required the new company to reinstate plaintiffs' policies in accordance with the rehabilitation agreements and the filing of a bond conditioned on the performance of the same is reversed, and the cause is remanded, with directions to enter decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part*
*and remanded, with directions.*