(No. 54211.—

STEVEN MINER, Appellant, v. THE GILLETTE COM-
PANY, Appellee.

*Opinion filed November 13, 1981.*

8

Robert S. Atkins and Kenneth P. Ross, of Freeman, Atkins & Coleman, Ltd.; Paul Bernstein and Henry A. Waller, of Bernstein & Waller; and Harry G. Fins, all of Chicago, for appellant.

Russell M. Baird, George A. Platz, Shalom L. Kohn, and Sandra L. DeGraw, of Sidley & Austin, of Chicago, for appellee.

10

Kevin M. Forde, Ltd., of Chicago (David Kahn, Vincent J. Getzendanner, Jr., and William J. Harte, of counsel), for *amicus curiae* Consumer Coalition.

MR. JUSTICE MORAN delivered the opinion of the court:

Steven Miner, plaintiff, filed a class action complaint in the circuit court of Cook County on behalf of a nationwide class of consumers against the defendant, Gillette Company, in connection with defendant's promotion of its "cricket" disposable butane lighters. Count I alleged that defendant's conduct amounted to an "unfair and deceptive act or practice" within the meaning of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*). Count II alleged breach of contract. Defendant moved to dismiss the class action. The motion was denied as to the Illinois class. The trial court dismissed the action brought on behalf of nonresident class members but found the question of law concerning the propriety of maintaining the class action on behalf of nonresident members one "to which there is substantial ground for difference of opinion" and, therefore, certified the issue for appeal pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308). The appellate court initially denied plaintiff's application for leave to appeal. This court, in the exercise of its supervisory jursidiction, ordered the appellate court to grant plaintiff's application for leave to appeal. Upon review the appellate court affirmed. (89 Ill. App. 3d 315.) After allowing plaintiff's petition for leave to appeal, we allowed the Consumer Coalition to file an *amicus curiae* brief.

The plaintiff argues that neither due process nor the Illinois class action statute precludes an Illinois plaintiff from maintaining a multistate class action in Illinois. Defendant, on cross-appeal, contends that the action cannot proceed under section 57.2 of the Civil Practice Act (Ill.

Rev. Stat. 1979, ch. 110, par. 57.2) on behalf of any class, even if limited to Illinois residents.

The defendant conducted a sales promotion by offering to supply a free Accent Table Lighter (accent lighter) to persons remitting proof of purchase of two "cricket" lighters together with 50 cents for postage and handling. At the time, defendant had approximately 200,000 accent lighters from which it expected to fulfill responses to such offer. However, the response to the offer exceeded defendant's expectations and, although 70,000 additional accent lighters were assembled, defendant was unable to fill approximately 180,000 requests. Consequently, defendant mailed a letter to each of the 180,000 persons stating that the supply of accent lighters had been exhausted and apologizing for the inconvenience. At the same time, defendant returned to each of this group of persons the 50-cent postage-and-handling charge together with a free "cricket" lighter. Plaintiff was one of the 180,000 consumers.

Plaintiff contends that the due process clauses of the United States Constitution and the Constitution of Illinois do not prevent the maintenance of a class action on behalf of nonresident class members. In the present case, both the trial court and the appellate court relied on *Spirek v. State Farm Mutual Automobile Insurance Co.* (1978), 65 Ill. App. 3d 440, in holding that absent "minimum contacts" with this State, Illinois courts are without jurisdiction to render a binding judgment over nonresident plaintiffs in a class action suit in that such a judgment would violate due process. The court in *Spirek*, relying on concepts enunciated in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, stated:

"The due process clause still 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has not contacts, ties, or relations.' " *Spirek v. State Farm Mutual Automobile Insurance*

*Co.* (1978), 65 Ill. App. 3d 440, 453.

Defendant argues that the trial and appellate courts correctly found that the multistate class action cannot be maintained because of the nonresident class members' lack of "minimum contacts" with this State. It bolsters its position by referring to language in various United States Supreme Court cases. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154; *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569; *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) Plaintiff and *amicus* do not contend that the relationship of nonresident class members with this State provides sufficient contacts to meet the "minimum contacts" test of *International Shoe* and its progeny. Rather, it is asserted that the test itself is inapplicable to plaintiffs in a class action case.

The question of whether the "minimum contacts" test is applicable to nonresident plaintiffs in a class action case was addressed in *Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 567 P.2d 1292. The court found that *International Shoe* and the line of cases emanating from it dealt specifically with nonresident *defendants.*

"Whether all *nonresident plaintiffs* in a class action are required to have 'minimum contacts' with the forum is a different matter. Because a class action must necessarily proceed in the absence of almost every class member, we hold the residential makeup of the class membership is not controlling. [Citation.] What is important is that the nonresident plaintiffs *be given notice and an opportunity to be heard and that their rights be justly protected by adequate representation.* These are the essential requirements of due process, and they must be satisfied in any class action by every court, state or federal, regardless of the residences of the absent class members. Therefore, while the essen-

tial element necessary to establish jurisdiction over nonresident defendants is some 'minimum contacts' between the defendant and the forum state, *the element necessary to the exercise of jursidiction over nonresident plaintiff class members is procedural due process.*" (Emphasis in original.) (*Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 542-43, 567 P.2d 1292, 1305.)

(See *Schlosser v. Allis-Chalmers Corp.* (1978), 86 Wis. 2d 226, 241-42, 271 N.W.2d 879, 886-87.) Moreover, the Supreme Court has recognized class actions as an exception to the rule requiring *in personam* jurisdiction over a party before he will be bound by a judgment rendered.

"To these general rules there is a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it. * * *

* * * Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree." *Hansberry v. Lee* (1940), 311 U.S. 32, 41-42, 85 L. Ed. 22, 26-27, 61 S. Ct. 115, 118.

This exception has been recognized and employed by this court in *Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 592, and *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 90.

"This exception is made possible by a requirement that the representative parties fairly and adequately protect the interest of the class. * * * But adequate representation is not the sole touchstone of due process. There can be threshold findings of adequate representation with notice nevertheless required as a matter of due process to allow members of the class their constitutional opportunity to be heard." (*Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 592-93.)

This exception is justified when one examines the nature of a class action suit. Its very purpose is to allow a representative party to pursue the claims of a large number of persons with like claims. It consequently does not contemplate or necessitate the appearance of absent parties. The class action device is, in fact, predicated on the inability of the court to entertain the actual appearance of all members of the class as well as the impracticality of having each member prosecute his individual claim. The basic premise of the class action procedure is the fairness of having a proper representative act on behalf of the absent parties.

The constitutionality of the present class action on behalf of nonresident members must be determined by asking (1) if plaintiff adequately represents the nonresident parties and (2) if notice can insure the class of its constitutional opportunity to be heard and protect each member's option to choose not to participate.

The test applied to determine adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined. (*Newberry Library v. Board of Education* (1944), 387 Ill. 85, 90.) The attorney for the representative party "must be qualified, experienced and generally able to conduct the proposed litigation." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 339.) Additionally, plaintiff's interest must not appear collusive. *Steinberg v. Chicago Medical School* (1977), 69 Ill.

2d 320, 338-39.

In the present case, the claim of plaintiff is identical to that of each of the other class members. Each performed in the identical manner by mailing the required proof of two purchases of "cricket" lighters and 50 cents postage and handling to defendant as required in the promotional offer. Each class member received the same letter of explanation and apology with a 50-cent refund and a free "cricket" lighter. At this stage of the proceedings, there is no evidence that plaintiff's claim is antithetical to those of other members of the class, nor is there evidence that the suit is a collusive or friendly action. These are matters for the trial court's future determination.

The question of what notice must be given to absent class members to satisfy due process necessarily depends upon the circumstances of the individual action. (*Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 593.) We believe that in the present circumstances, where the identity and address of each class member is readily accessible by use of defendant's files, individual notice is required in order to insure that each class member's right to pursue his claim is protected. The notice must also inform each class member of his right to "opt out" of the present action and must specify the procedure to accomplish such.

Under the full faith and credit clause of the United States Constitution, a judgment rendered in a State which had proper jurisdiction over the parties must be recognized and enforced in a sister jurisdiction. Absent plaintiffs in a class action suit are bound by such a judgment despite the fact that they were not personally served and did not appear in the rendering court so long as the due process requirements of proper notice and adequate representation were satisfied. *Larson v. Pacific Mutual Life Insurance Co.* (1940), 373 Ill. 614, 623-25; *Hartford Life Insurance Co. v. Ibs* (1914), 237 U.S. 662, 670-72, 59 L. Ed. 1165, 1168-70, 35

S. Ct. 692, 695-96.

Once the trial court determines that the due process requirements of notice and adequate representation have been met, the judgment rendered on behalf of the class members—resident and nonresident—will be binding on each, and such judgment will be entitled to full faith and credit. U.S. Const., art. IV, § 1.

Defendant alternatively argues that the present multi-state class action cannot be maintained in that it does not meet the statutory requirement of a predominating common question of fact or law. It is defendant's position that although there may be a common question of fact, it is not the predominating issue in this action. Rather, defendant contends, the individual questions of law relating to each of the 50 States is the predominant focus of the action.

Section 57.2 of the Civil Practice Act provides:

> "An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

(Ill. Rev. Stat. 1979, ch. 110, par. 57.2.)

The court has explained the test to be applied under section 57.2(a)(2):

> "So long as there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class, the statutory requisite is met." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338.)

Apparently, the appellate court interpreted this section to require *both* a common question of fact *and* a common question of law. Although the court found the presence of a predominating question of fact, it further sought the existence of a predominating question of law. The court stated:

"[A] common question of fact predominates over any question affecting only individual members * * *. However, it is evident that no common question of law predominates as to nonresidents." (89 Ill. App. 3d 315, 319.)

On this basis, the appellate court found that the requirements of section 57.2(a)(2) were not satisfied.

Contrary to the interpretation of the appellate court, the requirement of section 57.2(a)(2) is couched in the disjunctive—"common questions of fact *or* law." It does not, therefore, require the presence of both a common question of fact and a common question of law. However, the finding of a common question of fact or law cannot alone satisfy the statutory requirement, for such common question must *"predominate"* over the individual questions that may be involved. We have already found, under the due process analysis above, the presence of a common question of fact for all class members. The next question under the statute is whether this common question of fact predominates over the individual questions of law inherent in the application of the laws of the 50 States. Because the trial court, relying on *Spirek*, dismissed the class action on behalf of nonresident members on due process grounds, this question was not fully examined.

The class action statute specifically provides for the maintenance of a class action which may be "divided into sub-classes and each sub-class treated as a class." (Ill. Rev. Stat. 1979, ch. 110, par. 57.3(b).) The feasibility of subdividing a class is properly made by the trial court at a preliminary hearing. (See generally *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 467.) We believe that the issue of

whether the common question of fact or the individual questions of law predominate in the present case is dependent upon plaintiff's ability to establish that the differing laws of the States are subject to grouping in a manageable number of subclasses. If, after the parties have produced specific evidence relating to this question, the trial court finds that such subclasses of laws may be made, then the common question of fact will necessarily predominate and the statutory requirement will be satisfied.

Defendant, on cross-appeal, contends that the appellate court erred in its finding that a class action may be brought on behalf of Illinois residents. Defendant argues that class action is inappropriate in that the individual claims of plaintiffs are "de minimis" and have already been compromised in a reasonable manner. Defendant also asserts that the existence of individual questions of fact predominate over common questions of fact, contrary to section 57.2(a)(2) of the Civil Practice Act.

Defendant relies on *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, for its contention that class action status should be denied where individual claims are small. In *Adams,* a class action seeking the refund of cigarette taxes was brought on behalf of persons who purchased cigarettes from the defendant retailer. Although the court found class action to be improper, it did not, as defendant here contends, base such denial solely on the small dollar amount involved in each claim. Rather, the court justified its denial by referring to the vast number of unidentified individuals in the class, the lack of objective corroboration for each claim and the rule of law providing that taxes voluntarily paid cannot be recovered. 63 Ill. 2d 336, 348-49.

In the present case, individuals with potential claims are readily identifiable by examination of defendant's files. Moreover, the object of the class action procedure is to adjudicate a large number of very small claims in one proceeding. We therefore find no merit to defendant's

contention.

Defendant also argues that its action in refunding the 50-cents postage-and-handling charge and providing each class member with a free "cricket" lighter is proof that the claims have been compromised in a reasonable manner and, thus, defeats the present class action.

The general rule is that, on a motion to dismiss, all well-pleaded facts are accepted as true. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329.) The facts are undisputed that defendant did not remit the accent lighter as promised in its promotion. Any question of compromise is one of fact which must await trial for determination.

Relative to the maintenance of an action on behalf of the Illinois class, defendant claims that common questions of fact do not predominate, in that individual proof is necessary to establish each member's claim. Defendant contends that the elements of reliance, satisfaction, waiver, and consideration are different in each case and, thus, defeat the requirement of a common question of fact or law under section 57.2(a)(2).

The present case is predicated upon a series of essentially identical transactions by thousands of purchasers, including Illinois residents, which were founded upon and arose out of identical language in the promotional offer prepared by defendant. Unlike in the class of nonresidents, the Illinois class also has a common question of law, that is, the law of Illinois, so that there is no possibility that different questions of law will predominate. Thus, the requirements of section 57.2(a)(2) that there be a predominating common question of fact *or* law is easily met. Once this basic determination has been made, the fact that there may be individual questions, as proposed by defendant, will not defeat the predominating common question. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 340-41; *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 234.) Moreover, the individual questions postulated by defendant

are mere hypotheticals. This court in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, stated:

"But the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action. Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action."

See K. Forde, *Class Actions in Illinois: Toward a More Attractive Forum for this Essential Remedy*, 26 De Paul L. Rev. 211, 221 (1977).

For the reasons stated, we affirm that portion of the judgment of the appellate court upholding the trial court's denial of the motion to dismiss the class action brought on behalf of residents of Illinois but reverse that part of the judgment upholding the trial court's dismissal of the class action brought on behalf of nonresidents. The judgment of the circuit court is affirmed as to the suit by Illinois residents and reversed as to its dismissal of the action on behalf of nonresidents. The cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*

MR. JUSTICE RYAN, dissenting:

Since the Supreme Court has severely limited the availability of the Federal courts for class action litigation (see *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140; *Zahn v. International Paper Co.* (1973), 414 U.S. 291, 38 L. Ed. 2d 511, 94 S. Ct. 505; *Snyder v. Harris* (1969), 394 U.S. 332, 22 L. Ed. 2d 319, 89 S. Ct. 1053), those seeking to litigate consumer claims have been urging the use of State courts in which to maintain multi-state plaintiffs class suits. (See Note, *Toward a Policy-Based*

*Theory of State Court Jurisdiction Over Class Actions,* 56 Tex. L. Rev. 1033 (1978); Note, *Multistate Plaintiff Class Actions: Jurisdiction and Certification,* 92 Harv. L. Rev. 718 (1979); Comment, *Civil Procedure: In Personam Jurisdiction Over Nonresident Plaintiffs in Multistate Class Actions,* 17 Washburn L.J. 382 (1978); Ross, *Multistate Consumer Class Actions in Illinois,* 57 Chi.-Kent L. Rev. 397 (1981); Forde, *Class Actions in Illinois: Toward A More Attractive Forum For This Essential Remedy,* 26 De Paul L. Rev. 211 (1977).) In fact, partly in response to the Supreme Court decisions above referred to, the National Conference of Commissioners on Uniform State Laws prepared and proposed a Uniform Class Actions Act or Rule. (See Vestal, *Uniform Class Actions,* 63 A.B.A. J. 837 (1977).) I will refer to this uniform proposal later.

I dissent from the opinion of this court because the assertion of jurisdiction over nonresident class members far exceeds the proposal of the uniform act and far exceeds the holding of any case of which I am aware. The opinion seems to be reaching out to sweep into Illinois all nationwide class litigation which cannot be maintained in the Federal courts because of *Eisen, Zahn* and *Snyder,* and which no other State will entertain. As I will point out later, *Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 567 P.2d 1292, relied on by the majority in this opinion to support its decision, is not authority for its holding and, in fact, clearly indicates that this action could not be maintained in Kansas.

The majority opinion omits some essential matters from its statement of facts. In this case, the defendant company, Gillette, is a Delaware corporation, with its headquarters in Massachusetts. The responses to the ad for the lighters were directed to Spott International, a "fulfillment house" in Minnesota. No aspect of the promotion took place in Illinois other than those aspects seeking responses from persons in this State. The 180,000 requests for the accent lighters which

could not be filled came from persons in every State of the United States, the District of Columbia, Puerto Rico, and Canada. About 12,000 unfilled requests came from people in Illinois.

My colleagues found that the "minimum contact" requirement for a court to entertain jurisdiction over nonresident defendants is not applicable to nonresident plaintiffs in a class action. The opinion then lifted some language from the Kansas case of *Shutts v. Phillips Petroleum Co.* referred to above, and found that the only element necessary to the exercise of jurisdiction over nonresident plaintiffs is procedural due process, which would be satisfied by notice to the nonresident plaintiffs and adequate representation of their interests. I submit that more is required.

It is interesting to note that the proposed uniform act retains the "minimum contact" concept for jurisdiction of members of the class whether the action is brought on behalf of a class of plaintiffs or against a class of defendants. Section 6 of the proposed act provides for jurisdiction over a member of a class if "a basis for jurisdiction exists or would exist in a suit against the person under the law of this State." National Conference of Commissioners on Uniform State Laws, Uniform Class Actions [Act] [Rule] § 6 (1976); Vestal, *Uniform Class Actions,* 63 A.B.A. J. 837, 838 (1977); Scher, *Opening State Courts to Class Actions: The Uniform Class Actions Act,* 32 Bus. Law. 75 (1976).) I realize that the Illinois class action legislation is not patterned after the uniform act. However, the jurisdictional provisions of the uniform act indicate that the "minimum contacts" jurisdictional requirement is not a relic of the past and enjoys substantial present-day support.

Admitting that a departure from the "minimum contacts" requirement is permissible, I, nonetheless, maintain that this State must have a certain nexus with the claims of the absent class members before our courts can extend their jurisdiction beyond the borders of this State. It must be

remembered that, by entertaining class actions, Illinois is not simply conferring benefits on the absent class members. It is also binding the absent class members by the judgment rendered in the courts of this State, and it is depriving these absent class members of the right to litigate their claims in the courts of their own States. The mere extending of procedural due process is not by itself sufficient to justify litigating here the rights of those who have no contact with Illinois. In addition to procedural due process, this State must have an interest in the litigation.

In this respect, the majority opinion has misread *Shutts v. Phillips Petroleum Co.* In that case the defendant had withheld certain royalty payments on natural gas to the owners of royalty interests in a gas-producing area known as the *Hugoton-Anadarko* rate-making area until a final determination of the rates. When the determination was made, the defendant made the payments that had been withheld, but paid no interest. The class action was brought to collect the interest on the withheld payments. *All of the State of Kansas,* as well as parts of the States of Oklahoma and Texas, comprised the *Hugoton-Anadarko* area. Kansas comprised the largest portion of the area. The trial court, in *Shutts,* determined "that this court having jurisdiction of a large physical portion of the Hugoton-Anadarko area is a convenient forum for such action." *Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 539, 567 P.2d 1292, 1303.

In addition to noting the interest of the State of Kansas in the payment of royalties on natural gas extracted from that area, the *Shutts* court also likened the case to one involving a common fund. Had the defendant placed the withheld payments in a trust fund separate from its operating funds, the court stated that the case would "dovetail nicely into the 'common fund' cases." (*Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 552, 567 P.2d 1292, 1311.) The court held that the fact the defendant had commingled the funds with its own would not take the case

out of the "common fund" category. The court stated that a class action may be binding on nonresident plaintiffs when a "common fund" is involved *and* where due process requirements are met. (*Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 552, 567 P.2d 1292, 1311.) Kansas clearly had an interest in the litigation, and the *Shutts* case does not hold that extending due process requirements alone confers jurisdiction on the State courts over nonresident plaintiffs. In *Shutts*, the court also discussed *Feldman v. Bates Manufacturing Co.* (1976), 143 N.J. Super. 84, 94, 362 A.2d 1177, 1182, which held that without "affiliating circumstances" between the forum State and the litigation, the judgment in a plaintiff's class action suit could not bind nonresident class members. In *Shutts*, the court stated that *Feldman* was an excellent example of a factual situation in which a judge should deny certification of a class action where nonresident class members are involved. The facts in *Feldman* are strikingly similar to those in our case. The nonresident plaintiffs had no contacts in New Jersey, and that State had no interest in the litigation.

Illinois clearly has an interest in providing a forum wherein its citizens may seek redress for a wrong. Thus, a class action on behalf of resident members of the class is justified. Also, if the defendant had its corporate headquarters in Illinois, or if the solicitation had directed that money be sent to an entity in this State in response to the ad, Illinois would have had some interest in seeing that any wrong arising out of such a solicitation was rectified. But I fail to see any justification for attempting to litigate a claim in Illinois that someone residing in Puerto Rico, Canada, the District of Columbia, or any of the other 49 States has against a Delaware corporation with its headquarters in Massachusetts, when the money solicited was sent to a Minnesota entity. "[T]he crystallized issue simply is whether it is fair, as a policy matter, to permit the forum to resolve the dispute vis-a-vis the nonresidents." (Note, *Toward A*

*Policy-Based Theory of State Court Jurisdiction Over Class Actions,* 56 Tex. L. Rev. 1033, 1048 (1978).) Mr. Justice Brennan emphasized the policy-based nature of the inquiry, stating the "cases fairly establish that the State's valid substantive interests are important considerations in assessing whether it constitutionally may claim jurisdiction under a given cause of action." (*Shaffer v. Heitner* (1977), 433 U.S. 186, 222-23, 53 L. Ed. 2d 683, 709, 97 S. Ct. 2569, 2589 (Brennan, J., concurring in part and dissenting in part).) Although a State has an interest in protecting the rights of its citizens, it has no duty to protect, or interest in protecting, the rights of citizens of other States. It has been asserted that jurisdiction in class actions will not be upheld where the nonresident has no contact whatever with the particular State. (Note, *Multistate Plaintiff Class Actions: Jurisdiction and Certification,* 92 Harv. L. Rev. 718, 731 (1979).) Absent a nonresident plaintiff's contact with the forum State, or that State's interest in the litigation, it is doubtful if the judgment in the class action would be binding on nonresident plaintiffs or that it would be given full faith and credit or would be *res judicata* in another action against the same defendant by the absentee plaintiffs. This is particularly true where the forum State, in its eagerness to entertain the class action, undertakes to apply and construe the law of the State of residence of nonresident plaintiffs. Such conduct has the potential for undermining the ability and the right of other States to regulate transactions within their borders. *Multistate Plaintiff Class Actions: Jurisdiction and Certification,* 92 Harv. L. Rev. 718, 731-33 (1979).

We must consider with the above reasoning the correlative question: Why should the court system of this State assume the burden of adjudicating and administering a class action of this complexity when Illinois has no connection with the litigation beyond that of protecting its residents? Class actions of this magnitude are time consuming and difficult to manage. They constitute unusual burdens on an

already burdened court system. (Tornquist, *Road Map to Illinois Class Actions*, 5 Loy. Chi. L.J. 45, 47 (1974); Comment, *Consumer Class Actions With A Multistate Class: A Problem Of Jurisdiction*, 25 Hastings L.J. 1411, 1448 (1974).) Even in *Shutts* the court expressed concern about overburdening the Kansas court system by entertaining class actions in which that State did not have an interest. *Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 557, 567 P.2d 1292, 1314.

I also wish to point out that the court in *Shutts* stated: "When liability is to be determined according to varying and inconsistent state laws, the common question of law or fact prerequisite [in our statute] will not be fulfilled." *(Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 557, 567 P.2d 1292, 1314.)

This language forms the basis for another disagreement I have with the majority opinion. In some States a mass promotional scheme, as is involved in our case, is viewed as an offer. (See *Oliver v. Henley* (Tex. Civ. App. 1929), 21 S.W.2d 576.) Whereas, in other States such an advertisement is viewed only as an invitation to make an offer. (See *People v. Gimbel Bros., Inc.* (1952), 202 Misc. 229, 115 N.Y.S.2d 857.) Under the holding of *Shutts,* in the language quoted above this difference would destroy the commonality necessary to the maintenance of a class action under the contract theory under count II of the complaint in our case, whether or not the courts of this State can take judicial notice of and apply the law of other States. (See Ross, *Multistate Consumer Class Actions In Illinois*, 57 Chi.-Kent L. Rev. 397, 418-22 (1981).) The holding of *Shutts,* the case relied on in the majority opinion, makes a class action on behalf of the nonresident plaintiffs inappropriate in this case.

Count I of the complaint is based on the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*). I just cannot

understand how, under the facts of this case, a resident of Puerto Rico, Canada, the District of Columbia, or any of the other 49 States can possibly have a right to recover under the Illinois statute. The majority opinion speaks of grouping the laws of the various States into a "manageable number of subclasses." (87 Ill. 2d at 18.) It is not clear whether or not the majority, in making this statement, is referring to consumer fraud laws of other States. However, the plaintiff argues in its brief for the application of the consumer fraud laws of the other jurisdictions. Count I of the complaint, however, appears to be based on the Illinois statute and not those of other States. Even if it were proper, under the pleadings of this case, to attempt to apply the consumer fraud statutes of other jurisdictions, it must be acknowledged that these statutes differ substantially and the plaintiffs' rights under such statutes will not be the same. For example, some consumer fraud statutes do not permit a private cause of action or permit one only under certain circumstances. (See *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93.) Under the holding of *Shutts,* this would destroy the common interest necessary for the maintenance of a class action. It appears to me that, in a case where Illinois has no interest, we are reaching out and dragging into this State nonresident litigation from 49 other States, Puerto Rico, the District of Columbia, and Canada, and are usurping the authority of the courts of those other jurisdictions to provide a forum for the protection of the rights of their citizens.

I not only view the majority opinion as usurping the authority of other jurisdictions, but I also see it as imposing a needless burden upon our judicial system accompanied by the imposition of needless expenses upon the taxpayers of this State. The opinion speaks of grouping the classes into a "manageable number of subclasses." (87 Ill. 2d at 18.) Of course, any litigation is manageable if sufficient resources are devoted to it. At a time when the judicial system of this

28

State, and especially that of Cook County, is striving to eliminate unacceptable delay in the disposition of cases, we should not needlessly add this additional burden and the burden of other multistate class actions that will surely follow as a result of this opinion.

One of the requirements of our class action statute is that the trial court find that "[t]he class action is an appropriate method for the *fair* and *efficient* adjudication of the controversy." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 110, par. 57.2(a)(4).) Upon remand I suggest that the trial court seriously consider the *fairness* of depriving other jurisdictions of the right to protect their own citizens under the circumstances of this case and likewise consider whether it is an *efficient* utilization of the resources of this State to litigate claims in which Illinois has no interest. In determining whether the action is manageable, the court should consider not whether it is manageable by the use of unlimited resources, but whether it is *reasonably* manageable under the circumstances of this particular case.

MR. JUSTICE UNDERWOOD joins in this dissent.