# Illinois Official Reports

## Appellate Court

---

### *CE Design Ltd. v. C&T Pizza, Inc.*, 2015 IL App (1st) 131465

---

| | |
|---|---|
| Appellate Court Caption | CE DESIGN LTD., an Illinois Corporation, Individually and as the Representative of a Class of Similarly Situated Persons, Plaintiff-Appellee, v. C&T PIZZA, INC., Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-1465 |
| Filed<br>Rehearing denied | May 8, 2015<br>June 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-27638; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Affirmed; cause remanded. |
| Counsel on Appeal | James K. Borcia and Ryan Taylor, both of Tressler LLP, of Chicago, for appellant.<br><br>Phillip A. Bock, Robert M. Hatch, and Jonathan B. Piper, all of Bock & Hatch LLC, of Chicago, and Brian J. Wanca, of Anderson & Wanca, of Rolling Meadows, for appellee. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Justices Lampkin and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this interlocutory appeal, defendant C&T Pizza, Inc., appeals a circuit court order granting plaintiff CE Design Ltd., class certification in an action alleging, *inter alia*, violation of the federal Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227(b)(1)(C) (2006)), which makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." Defendant raises several arguments as to why it believes the circuit court abused its discretion in certifying the class. We address the arguments in turn and find no merit in them.

¶ 2                                          BACKGROUND

¶ 3    Defendant C&T Pizza, Inc., doing business as Great Chicago Pizza, is a small company operating a pizza delivery restaurant in Schaumburg, Illinois. In March 2006, a fax broadcaster doing business as Business to Business Solutions (B2B) sent a fax to defendant advertising its services. B2B is a company based in New York and run by Caroline Abraham, who works with a Romanian company known as Macaw (also Maxileads), to send fax advertisements in the United States. See *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 137 (N.D. Ill. 2009). Defendant's owner, Joseph Cianciolo, responded to B2B's advertisement and ultimately hired the company to advertise his pizza business.

¶ 4    Cianciolo consulted with B2B to create a fax advertisement and filled out a document from B2B with information and details about his pizza business. B2B took the information provided by Cianciolo and created an advertisement for the business. Defendant paid B2B $268 to send out 5,000 fax advertisements. B2B planned on transmitting the fax advertisements to zip codes and area codes near Cianciolo's pizza business. On May 4, 2006, B2B faxed defendant's advertisement to 2,765 fax numbers, of which 1,935 were successfully transmitted. The next day, B2B faxed defendant's advertisement to 2,729 fax numbers, of which 1,893 were successfully transmitted.

¶ 5    Plaintiff CE Design Ltd., received faxes on both of these days. Plaintiff is a small civil engineering firm based in the Chicago area that engages in plaintiff class-action litigation involving the TCPA. See *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011); *CE Design, Ltd. v. Cy's Crab House North, Inc.*, 731 F.3d 725, 726 (7th Cir. 2013).

¶ 6    In December 2006, plaintiff filed suit against defendant, and Cianciolo and his wife Fran Cianciolo, seeking statutory damages under the TCPA, the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)), and for conversion. Plaintiff also filed a motion for class certification. In April 2013, the circuit court granted plaintiff's motion for class certification. The court issued a memorandum opinion and order certifying the following class:

> "All persons who, on May 4, 2006 or May 5, 2006, were sent a facsimile offering 'Pizza-Pasta-Deli' from 'Great Chicago' in Schaumburg, IL, and identifying a 'Remove Hotline' telephone number of 718-360-0971, without express consent and without a prior established business relationship."

¶ 7    Defendant filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(8) (eff. Feb. 16, 2011), which our court granted, and this interlocutory appeal followed.

¶ 8                                    ANALYSIS

¶ 9    The basic purpose of a class action is the efficiency and economy of litigation. See *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981) (purpose of a class action suit is to allow a representative party to pursue the claims of a large number of persons with like claims). A trial court has broad discretion in determining whether a proposed class meets the requirements for class certification. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007). In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification (*Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)), but should avoid deciding the underlying merits of the case or resolving unsettled legal questions (*Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 775 (2008)).

¶ 10    Section 2-801 of the Illinois Code of Civil Procedure (Code) sets forth the prerequisites needed to maintain a class action. 735 ILCS 5/2-801 (West 2006). Pursuant to section 2-801 of the Code, the trial court may certify a class if the proponent establishes the following prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (West 2006). These prerequisites are generally referred to as numerosity, commonality, adequacy of representation, and appropriateness. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005). The party seeking class certification bears the burden of establishing all four prerequisites. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 167 (2005).

¶ 11    Defendant first raises several arguments as to why it believes plaintiff failed to satisfy its burden of demonstrating that questions of law or fact common to class members predominate over questions affecting only individual members. Defendant argues that in order for a putative class member to be entitled to damages for a violation of the TCPA, the plaintiff must prove that each class member actually received the fax ad, which defendant maintains is an individual issue of fact. This argument is meritless.

¶ 12    The TCPA makes it unlawful to "send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). It does not mention "receipt" as an element. See, *e.g.*, *Hinman v. M&M Rental Center, Inc.*, 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009) ("On its face, the statute prohibit[s] the *sending* of unsolicited fax advertisements and make[s] no reference at all to receipt, much less to printing." (Emphasis in original.)). Moreover, even assuming that proof of receipt was required, B2B's fax logs show exactly who received the fax ads and detail the successful transmissions and those that were unsuccessful. See, *e.g.*, *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (B2B's fax logs indicating successful transmissions sufficient evidence of proof of receipt).

¶ 13    Defendant next contends that individualized questions predominate because it is unknown if any of the alleged fax recipients had previously consented to receive the fax ads or were in an established business relationship with defendant. Fax advertisements are not prohibited if the

- 3 -

unsolicited advertisement is "from a sender with an established business relationship with the recipient." 47 U.S.C. § 227(b)(1)(C)(i). Defendant has not presented any evidence showing the fax transmissions were authorized by either prior consent or pursuant to an established business relationship. Hypothetical arguments regarding whether some of the class members either consented to receive the fax ads or had an existing business relationship with defendant are not sufficient to preclude class certification. See *Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2014 IL App (1st) 131543, ¶ 27.

¶ 14 Defendant next argues for the first time on appeal that only the owners of the fax machines who received the unsolicited fax ads at issue have standing to assert a claim under the TCPA and therefore plaintiff would have to identify these owners in order to determine who would be a member of any of the classes. As an initial matter, we find this argument has been forfeited because defendant failed to raise it before the trial court. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (an issue not presented to the trial court is forfeited and may not be raised for the first time on appeal). Forfeiture aside, defendant's argument fails on the merits. "It is not necessary that the class representative name the specific individuals who are possibly members of the class." *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1981). Moreover, plaintiff has a list of every fax number to which defendant's faxes were sent, showing exactly when they were sent. Therefore, the class is sufficiently ascertainable.

¶ 15 Defendant next contends that the plaintiff is not an adequate class representative. We do not believe the trial court abused its discretion in finding otherwise. In determining the adequacy of representation, the trial court must examine the adequacy of the named class representative and its counsel. *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 551-52 (2003). " 'The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim.' " *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 678 (2006) (quoting *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1004 (2004)).

¶ 16 The test to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined. *Miner*, 87 Ill. 2d at 14. In addition, "[t]he attorney for the representative party 'must be qualified, experienced and generally able to conduct the proposed litigation.' " *Miner*, 87 Ill. 2d at 14 (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 339 (1977)).

¶ 17 Here, defendant posits several arguments against the adequacy of plaintiff's representation, none of which we find persuasive. Defendant argues for the first time on appeal that the plaintiff is not within the class definition because the class is defined as "all persons," and plaintiff is a corporation. As with its argument regarding standing, defendant has forfeited this argument by failing to raise it before the trial court. *Haudrich*, 169 Ill. 2d at 536. Forfeiture aside, this claim is meritless because the word "person" includes both natural persons and legal persons, which includes corporations such as plaintiff. See 1 U.S.C. § 1 (2006); *Mohamad v. Palestinian Authority*, 566 U.S. ___, ___, 132 S. Ct. 1702, 1707 (2012) (word "person" includes "corporations").

¶ 18 Defendant next contends that plaintiff resided outside the geographical area where B2B was authorized to transmit defendant's fax advertisements because plaintiff was located more than five miles from the pizza restaurant. Defendant claims that any fax advertisements sent

- 4 -

beyond a two-mile radius of the pizza restaurant were not authorized. There is nothing in the record to support this claim and defendant cites nothing where Cianciolo instructed B2B to limit the geographic target area to a two-mile radius of the pizza restaurant.

¶ 19 The only evidence defendant points to in support of this claim is Cianciolo's recollection of a telephone conversation he had with someone at B2B, wherein they discussed it was "supposed to be like a couple of miles from the business." This is hardly a strict instruction to B2B to limit all faxes to exactly two miles. Moreover, this initial conversation occurred on March 1, 2006, and Cianciolo did not finally agree to have B2B transmit the fax advertisements on defendant's behalf until two months later on May 3, 2006. In the meantime, Cianciolo exchanged numerous faxes with B2B and had a second telephone conversation with B2B where he never again mentioned anything about geography, let alone a strict two-mile limitation on B2B's authority.

¶ 20 As it turned out, B2B did exactly what it agreed to do and transmitted defendant's advertisements to the fax numbers in its database that were as close to the zip code of defendant's restaurant as possible. The fax logs bear this out as they show the targets were in area codes 630 and 847. Plaintiff was hardly out of range to be a potential patron of the pizza restaurant and it is highly unlikely that defendant wanted to market only to potential patrons located exactly within two miles of the restaurant. There is no basis to contest liability under the TCPA for faxes that defendant admits to have authorized B2B to send.

¶ 21 In this case, Cianciolo admitted that he engaged B2B to send the fax advertisements on behalf of defendant. In *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6591-92 (May 9, 2013), the Federal Communications Commission (FCC) determined that federal common law agency principles apply to determine vicarious liability for violations of the TCPA section 227(b). In *Dish Network*, the FCC established that liability under section 227(b) included circumstances in which the defendant's agent had apparent authority, as well as actual authority or ratification. *Id.*

¶ 22 Apparent authority arises when a principal creates a reasonable impression to a third party that the agent has the authority to perform a given act. *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 895 (2010). To prove apparent authority, the proponent must establish that: (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) based on actions of the principal and agent, the third party reasonably concluded that the agent had authority to act on the principal's behalf; and (3) the third party justifiably relied on the agent's apparent authority to his detriment. *Id.*

¶ 23 In *Dish Network*, the FCC gave the following factors as evidence of apparent authority in the context of TCPA violations: (1) whether the seller gave the telemarketer "detailed information regarding the nature and pricing of the seller's products" (2) whether the seller gave the telemarketer the "authority to use the seller's trade name, trademark and service mark" and (3) whether the seller "approved, wrote or reviewed" the telemarketing scripts. *Dish Network*, 28 FCC Rcd. at 6592-93. The evidence in this case indicates that defendant's agent, B2B, had the apparent authority to send the unsolicited fax advertisements. Defendant gave B2B information regarding the nature and pricing of defendant's product; defendant gave B2B authority to use its trade name; and defendant reviewed and approved the marketing material used by B2B. The trial court did not abuse its discretion by finding that B2B sent defendant's faxes to plaintiff on behalf of defendant where Cianciolo admitted that he engaged B2B to send

the fax advertisements on behalf of defendant and where the evidence indicates that B2B was acting with apparent authority under the TCPA as defined by the FCC.

¶ 24    Defendant places great reliance on the decision in *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566. We find that reliance is misplaced. The defendant in *Uesco* sent B2B a written letter stating, " 'At this point in time I would like only to market to "Small Electric Motor Repair + Service Companys [*sic*]" nationally so please tell me how much it will be.' " *Id.* ¶ 17. A written instruction "only to market" to a particular type of business is qualitatively different than a vague reference to geographic proximity.

¶ 25    Defendant next contends the plaintiff may have consented to receive the unsolicited faxes by listing its fax number in the "Blue Book" for construction firms. Defendant's argument is groundless. The FCC has stated, "We do not believe that the intent of the TCPA is to equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive such advertisements ***." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12408 (Aug. 7, 1995).

¶ 26    Defendant next argues the trial court abused its discretion in finding that class counsel was adequate. Defendant challenges the adequacy of class counsel based on alleged misconduct. In support of its argument, defendant relies on the Seventh Circuit Court of Appeals' decision *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) (*Creative I*), which vacated a class certification decision but did not reverse it. However, defendant fails to note that on remand, the district court expressly rejected the same attacks on the adequacy of class counsel that defendant makes here. *Creative Montessori Learning Center v. Ashford Gear, LLC*, No. 09 C 3963, 2012 WL 3961307, at *2 (N.D. Ill. Sept. 10, 2012) (*Creative II*). The Seventh Circuit denied leave to appeal the second decision certifying the class.

¶ 27    More importantly, the Seventh Circuit Court of Appeals reexamined the same issues on the merits in a later appeal and found class counsel adequate and affirmed class certification. *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013). The court noted that at least six other district courts had considered the same evidence since *Creative I*, and all six had determined that the conduct at issue did not require denial of class certification. *Reliable Money*, 704 F.3d at 496-97. In sum, we find the trial court did not abuse its discretion in finding that both the class representative and class counsel would adequately represent the class.

¶ 28    Finally, we reject defendant's contention that individual small claims would be preferable to a class action. As mentioned at the outset of our analysis, the basic purpose of a class action is the efficiency and economy of litigation. See *Miner*, 87 Ill. 2d at 14 (purpose of a class action suit is to allow a representative party to pursue the claims of a large number of persons with like claims). There is no doubt that certifying the class in this case, where there are potentially thousands of claimants, is an efficient and economical way to proceed and will prevent multiple suits and inconsistent judgments.

¶ 29    Defendant suggests that a class action is not a superior vehicle for resolving these claims because claimants could bring individual claims in small claims court. We must disagree. In Illinois, corporate victims such as plaintiff cannot go to small claims court without an attorney, so small claims court is not a superior vehicle for such class members seeking statutory damages under the TCPA. See *Mims v. Arrow Financial Services, LLC*, 565 U.S. ___, ___, 132 S. Ct. 740, 753 (2012) (noting that plaintiffs are unlikely to pay a $350 filing fee to bring

an individual TCPA claim for $500). The TCPA provides for a private cause of action to recover the greater of the actual monetary loss caused or $500 in statutory damages for each violation; a court may in its discretion treble these damages if it finds that the violation was willful. 47 U.S.C. § 227(b)(3) (2006).

¶ 30    Defendant also points to the potentially large liability defendants can face in class actions under the TCPA as reason to bar such claims. While we recognize defendant's concern, Congress established the remedy set forth in the TCPA and did not prohibit class actions from being used to enforce its provisions. The overall size of a potential class action award is not an appropriate basis on which to decline to certify a class alleging violations of TCPA. See *Ballard RN Center, Inc.*, 2014 IL App (1st) 131543, ¶¶ 40-43.

¶ 31    For the foregoing reasons, we affirm the trial court decision certifying the suit as a class action and remand the cause.

¶ 32    Affirmed; cause remanded.