JOSEPH SLIMACK *et al.*, on Behalf of Themselves Indiv. and All Other Persons Similarly Situated, Plaintiffs-Appellants and Appellees, v. COUNTRY LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees and Appellants.

Fifth District No. 5—90—0385

Opinion filed April 14, 1992.—Rehearing denied May 21, 1992.

Patrick M. Young and J. Michael Weilmuenster, both of Kassly, Bone, Becker, Dix, Reagan & Young, P.C., and Robert Wells, of Pessin, Baird, Belsheim & Wells, both of Belleville, for appellants.

Duane C. Quaini, Kirk R. Ruthenberg, and Roger K. Heidenreich, all of Sonnenschein, Nath & Rosenthal, of Chicago, and Allen D. Churchill, of Churchill, McDonnell & Hatch, of Belleville, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

The applications of both the plaintiffs and the defendants for interlocutory appeal by permission were granted pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). The plaintiffs seeking to maintain this class action suit pursuant to section 2—801 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—801) are former agents and the widow of a former agent of the defendants, Country Life Insurance Company, Country Mutual Insurance Company, and Country Ca-

sualty Insurance Company, which are related corporations and are hereafter referred to as "Country Companies."

The plaintiffs filed a complaint on October 21, 1981. In their amended complaint filed on October 28, 1988, they allege that they bring the action on behalf of themselves and all present agents of the defendants and all persons who worked during the 10-year period immediately preceding the filing of this action as independent contractors of the defendants for sale of insurance policies under two contracts attached to the complaint. Each of defendants' agents during the time in question was required to execute both of these contracts or contracts substantially similar to them. The contracts are apparently often referred to as the "1970 contract." Plaintiffs allege that they suffered damages in one or more of the following ways:

"A. Had accounts reassigned in a manner inconsistent and contrary to the express provisions of their contracts with Defendants thereby suffering loss of commissions due to them.

B. Suffered wrongful threats of termination for alleged failure to meet production requirements not specified by their contracts with defendant [sic] and the emotional distress resulting therefrom.

C. Were wrongfully terminated for alleged failure to meet production requirements not specified by their contracts with defendant [sic] or refusing to acquiesce to the reassignment of accounts they were servicing thereby suffering loss of all commissions and the emotional distress resulting therefrom.

D. Were wrongfully compelled to resign by threats of termination and/or defendant's [sic] refusal to comply in good faith with the terms and provisions of their contract thereby suffering loss of all commissions and the emotional distress resulting therefrom."

The plaintiffs allege that the defendants' actions constituted a breach of the contracts between members of the plaintiffs' class and defendants and, in addition, constituted one or more tortious acts, namely, conversion, intentional interference with prospective business advantage and/or oppressive conduct by economic duress of the members of the class. They seek compensatory damages for all breaches of contract and punitive damages for the tortious conduct alleged.

Following an extensive hearing conducted in September and October of 1988 concerning the certification of the class, the trial court entered an order on April 16, 1990, certifying as members of the plaintiffs' class persons included in the following description:

"All agents, if any, of Defendants who entered into the 1970 contract with defendants who had accounts reassigned in violation of the contract and those agents, if any, who were damaged by threats of termination or termination for failure to meet production requirements or for refusing to consent to the reassignments; all agents if any, who suffered economic duress by reason of defendants' alleged breach of the 1970 contract."

The trial court expressly found that certification of a class would avoid multiplicity of effort by counsel and the court and repeated appearances by the same witnesses, that uniformity and fairness of decision are more likely to result if all claimants are joined in the same proceeding, and that some claimants may not be able to secure legal representation if they must seek counsel individually. The trial court found further:

"That, notwithstanding defendants' willingness to admit that some factual and legal issues are not contested, if nothing else, the common (factual/legal) question remains as to whether defendant [sic] breached its [sic] (standard form) contracts with plaintiffs by reassigning (block assignments) accounts. Legal/factual questions involving contractual provisions and claimed violations thereof, definitions of terms, corporate actions, corporate knowledge and pronouncements may very well be common to plaintiffs; such questions preponderate over individual questions such as variance in computation of damages."

In its order the trial court expressly rejected the defendants' contention that plaintiffs cannot maintain this class action because each plaintiff would have to rely on a separate set of proofs, adding:

"The great bulk of the evidence would be the same in each case; the fact that evidence may vary to some degree is not controlling. In *Prucell [sic] v. Hertz Corp.* 530 N.E.2d 994, where the laws of different states were involved and there were many different types of leasing agreements, different costs and liabilities, the court held class certification was proper. Purcell cited *Miner v. Gillette*, 428 NE2d 479 indicating that the existence of individual issues, a separate determination of individual damages, multiple theories of recovery, or even the inability of some class members to obtain relief *** will not *** defeat a class certification of the common questions of fact or laws are otherwise predominant."

The trial court found that there is

"no conflict apparent at this time within the members of the proposed class. While several plaintiffs may seek recovery of

commissions from the same account, they do not seek reassignment to them of the particular account; they seek money damages, not from one another but from defendants. Furthermore, at this time it does not appear that this litigation threatens the financial viability of defendants."

The trial court found further that the representative parties and their counsel will fairly and adequately protect the interest of the class and that this class action is an appropriate method for the fair and efficient adjudication of the controversy.

In an order entered June 5, 1990, the trial court determined that the following questions should be certified for presentation to this court pursuant to Rule 308:

"1. Whether the trial court erred in certifying the following class 'All agents, if any, of Defendant [*sic*] who entered into 1970 contract with defendants who had accounts reassigned in violation of the contract and those agents, if any, who were damaged by threats of termination or termination for failure to meet production requirements or for refusing to consent to reassignments; all agents, if any, who suffered economic duress by reason of defendant's [*sic*] alleged breach of the 1970 contract.'

2. Whether the trial court complied with the requirements of Illinois Revised Statutes, 1987, Ch. 110, §2—801 et seq. in certifying the class.

3. Whether definition of the class meets the requirements of Illinois Revised Statutes, 1987, Ch. 110, §2—801 et seq.

4. Whether the trial court erred in finding that block (multiple) reassignment of accounts was not a *per se* violation of the 1970 contract between defendants and their agents."

The trial court certified further that either party was granted leave to petition this court for review of the issues pursuant to Rule 308.

The defendants take the position that the trial court did, in fact, err with respect to the first three issues but did not err with regard to the fourth issue. The plaintiffs take the opposite stance, contending that the trial court did not err with respect to the first three issues but, concerning the fourth issue, did err in finding that block reassignment of accounts was not a *per se* violation of the 1970 contract between the parties. Plaintiffs do urge, however, a different, "more workable and manageable" definition of the class than that determined by the trial court.

■ Certification of class actions in Illinois is governed by section 2—801, which provides:

"An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." Ill. Rev. Stat. 1989, ch. 110, par. 2—801.

The defendants assert that the three broad issues relating to class certification accepted for appeal boil down essentially to one question, whether the trial court properly certified this cause as a class action. Defendants do not dispute that the first requirement, that of numerosity, has been fulfilled. They do, however, dispute that the second and third requirements of section 2—801 have been met, addressing particularly the second of them, that of predominating common questions. The defendants urge us to reverse the trial court's certification of the class on two grounds especially: (1) the class certified by the trial court does not comply with section 2—801 because both the trial court's definition and the nature of the plaintiffs' claims in their amended complaint would require individual determinations of liability and causation and (2) in certifying the class the trial court failed to comply with section 2—802 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—802).

 ■ Certification of a class is within the sound discretion of the trial court and will be disturbed only if there is an abuse of that discretion or if impermissible legal criteria are applied. (*Purcell & Wardrope Chartered v. Hertz Corp.* (1988), 175 Ill. App. 3d 1069, 530 N.E.2d 994.) As long as there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class, the statutory requisite is met. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) The finding of a common question of fact or law cannot alone satisfy this statutory requirement because such a common question must "predominate" over the individual questions that may be involved. (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478.) Satisfaction of the requirement pertaining to predominating common questions of fact or law necessitates a showing that successful adjudication of the pur-

ported class representatives' individual claims will establish a right of recovery in other class members. (*Scott v. Ambassador Insurance Co.* (1981), 100 Ill. App. 3d 184, 426 N.E.2d 952.) Once the basic determination has been made that a predominating common question of fact or law exists, the fact that there may be individual questions will not defeat the predominating common question. (*Miner*, 87 Ill. 2d 7, 428 N.E.2d 478.) The requirement of individual proofs should not be a bar to a class action. (*Steinberg*, 69 Ill. 2d 320, 371 N.E.2d 634.) In a class action it is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual members. (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) In a class proceeding, if certain individual questions exist that may require individual determinations, these individual questions may be handled within subclasses, as long as the common issues predominate. (*Purcell*, 175 Ill. App. 3d 1069, 530 N.E.2d 994.) Furthermore, if at some later time in the litigation, the subclassification becomes unmanageable, the court, of course, always has the option to set aside the class certification or a portion of it. *Purcell*, 175 Ill. App. 3d 1069, 530 N.E.2d 994.

We note initially that none of the numerous and apparently voluminous exhibits admitted at the certification hearing have been included in the record for review. In the "Agents' Agreement," attached to the complaint as exhibit "B," paragraph 12 states as follows concerning "Commissions and Responsibilities":

> "Upon an Agent's termination or transfer to another Agency, or in any case to better serve a policyholder or upon written request of a policyholder, the credit for commission and the responsibility for servicing the policyholder may be assigned (i) by Agency Manager on policies assigned to his Agency in the County of Primary Responsibility or (ii) by each Company on policies assigned to his Agency located outside the County of Primary Responsibility."

The plaintiffs contend that these are the only circumstances under which an agent's accounts may be reassigned but that accounts were, in fact, reassigned in blocks of multiple accounts, particularly to new agents, in violation of these terms of the contract. In their complaint plaintiffs allege that the defendants knowingly, wrongfully, and intentionally commenced and continued schemes or plans to violate their contracts with the plaintiffs' class or, in the alternative, breached their contracts with plaintiffs' class by authorizing or ratifying actions by defendants' county managers which violated the terms of the con-

tract. Plaintiffs allege that the wrongful actions of the defendants "were in furtherance of Defendants['] plans to increase the number of new agents without the capital investment which otherwise would have been required to accomplish said purpose, thereby allowing Defendants additional capital for investment and expansion." The hiring of new agents during this time, plaintiffs state, was in furtherance of the defendants' comprehensive marketing plan to increase its sales force and, thus, its market share. Plaintiffs claim further that accounts were improperly reassigned in such blocks in order to coerce agents into selling more life insurance, which is more profitable to defendants than is casualty insurance. The plaintiffs contend that the "uniform plan or scheme," practiced in Illinois, to violate the provisions of the contract is the "predominant factual/legal question and predominates over all other individual issues." Plaintiffs assert that the defendants' wrongful practice of financing new agents at the expense of their existing agents requires no individual determination. "Financing new agents by means of reassignments of accounts was in violation of the contract between the parties," plaintiffs urge, "and a right of recovery exists in favor of each proper class member."

With respect to the second requirement of section 2—801 pertaining to predominating common questions, the defendants contend that the class certified by the trial court does not comply with this requirement, in part, because the trial court's definition of the class recognizes that each class member must prove his right to be a class member and his right to recover under one or more of the theories alleged in the amended complaint. The defendants maintain that the nature of each of the allegations of the plaintiffs' amended complaint demonstrates the trial court's error in permitting this cause of action to proceed as a class action because each allegation requires the trial court to make independent factual and legal determinations of liability and causation as to each potential class member. Defendants argue that because the contract clearly contemplates reassignments for the three reasons stated above, individual determinations would need to be made as to whether each reassignment violated the contract. Each agent's case will require a judicial determination, defendants say, of the reasons for the particular reassignments of his policies to other agents and then a judicial finding of whether, in light of those reasons, the reassignments are in breach of the contract as a matter of law. Defendants assert that whether a reassignment occurred in violation of the contract is not a common question but one that must be resolved as to each potential class member; for this reason, this case is inappropriate for resolution as a class action. Defendants state that

each reassignment must be analyzed separately to determine whether the reassignment, which was made at the discretion of each agency manager, was undertaken "to better serve a policyholder" in accord with the contract. They argue that the "mere fact that an agent had accounts assigned away from him does not establish a right of recovery" because the accounts could have been reassigned "to better serve a policyholder." Concerning the allegations of wrongful or threatened termination, defendants urge that these allegations require individual proof of the factual circumstances relating to each agent's actual or threatened termination. Defendants suggest that there may be a "vast array" of reasons for the termination of an agent by the defendants, "many of which revolve around the individual agent's performance and the specifics of his relationship with Defendants." Whether specific terminations or "so-called forced resignations" occurred because of defendants' improper conduct or some "independent" reason, defendants argue, must be determined according to the circumstances of each such incident. The plaintiffs' claim of economic duress will, defendants say, involve inquiries into the state of mind of each plaintiff. Similarly, defendants argue, the plaintiffs' claim of intentional interference with prospective business advantage will require individual inquiries concerning the defendants' intent to interfere without sufficient justification for doing so under the facts and circumstances pertaining to each particular class member. In sum, defendants urge, no common issue of fact or law predominates in this case.

The defendants rely heavily upon *Key v. Jewel Cos.* (1988), 176 Ill. App. 3d 91, 530 N.E.2d 1061, in which the plaintiffs sought class certification concerning a franchise agreement with the defendant White Hen Pantry, at the time a division of Jewel Companies, Inc. The plaintiffs asserted a claim of breach of fiduciary obligation, a claim of fraudulent misrepresentation, a claim under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and a claim under the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*). Although the case was initially conditionally certified as a class action, the class allegations were later stricken by the trial court on the basis that any common questions of law were overshadowed both by questions of fact and by particular applications of the law that would exist as to individual franchisees. On review the court determined initially that the trial court had not used an improper legal standard by the statement in its order that a favorable ruling as to a named plaintiff would not necessarily establish a right of recovery in the other members. In *Key* the plain-

tiffs asserted that the case warranted certification of a class action based on the following alleged common questions of law and fact: (a) whether Jewel breached its fiduciary duty to franchisees of White Hen Pantry; (b) whether Jewel failed to disclose to franchisees material facts about the operation of the White Hen Pantry system; (c) whether Jewel made adequate disclosure to prospective franchisees of the past economic performances of White Hen Pantry stores; and (d) whether Jewel's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Franchise Disclosure Act. The reviewing court concluded that

"these are not common questions but rather individual questions the resolution of which turns on specific facts as to the relationship between individual franchisees and White Hen Pantry and the manner in which individual franchisees operated their stores. Evidence in the record supports this view in that it shows that different franchisees realized significantly different operating results in different periods of time in different WHP stores. In fact, subsequent franchises at the store locations of the named plaintiffs all were economically profitable according to an affidavit filed by defendant's controller. There is no evidence to suggest that the experience of the plaintiffs, who were involuntarily terminated franchisees, is in any way representative of a class that would include all franchisees." (*Key*, 176 Ill. App. 3d at 97, 530 N.E.2d at 1064.)

The reviewing court stated further that

"[t]he matter here involves claims about various documents and oral representations as well as different financial and operating experiences of numerous franchisees. Not only would the named plaintiffs and each of the other class members have to prove that their franchises failed, each of them also would have to prove that White Hen Pantry's conduct caused the failure. Where individual determinations of proximate cause would be required which predominate over common questions of law and fact, a class action will not be certified." *Key*, 176 Ill. App. 3d at 98, 530 N.E.2d at 1065.

As the trial court did, the plaintiffs rely on *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478, and *Purcell & Wardrope Chartered v. Hertz Corp.* (1988), 175 Ill. App. 3d 1069, 530 N.E.2d 994. In *Miner* the supreme court found that the requirement of a predominating common question of fact or law was met in a case in which the members of the plaintiff class claimed that they had not received a free Accent Table Lighter as promised in the defendants' promotion

of its disposable butane lighters. When the demand for such lighters had exceeded the supply, the defendant had been unable to fill all the requests. The defendant contended that the elements of reliance, satisfaction, waiver, and consideration were different in each case and, thus, defeated the requirement of a common question of fact or law. The court noted that the case was predicated upon a series of essentially identical transactions by thousands of purchasers, including Illinois residents, which were founded upon and arose out of identical language in the promotional offer prepared by the defendant. Further, the class of Illinois residents had a common question of law, that is, the law of Illinois, so that there was no possibility that different questions of law would predominate. Having determined that the requirement of a predominating question of fact or law was easily met, the court observed that once that basic determination has been made "the fact that there may be individual questions, as proposed by defendant, will not defeat the predominating common question." *Miner*, 87 Ill. 2d at 19, 428 N.E.2d at 485.

In *Purcell* the plaintiff brought a class-action suit on behalf of a nationwide class to recover security deposits and accrued interest on security deposits that the defendant required pursuant to the terms of its automobile lease contracts. The trial court denied class certification, finding that individual questions of fact and law predominated and that the plaintiff could not provide adequate representation for a class action. The case was tried as an individual action under Illinois law. Upon the plaintiffs' appeal, the defendant asserted that the common questions of fact and law did not predominate over the individual questions. The defendant contended no common issues of fact or law existed because each lease transaction was, in fact, dissimilar. The defendant asserted that there were differences in the terms of each lease and the amounts required and returned for each security deposit under each lease, which, defendant argued, necessarily depended upon the individual facts; thus, defendant urged, there could be no commonality. The defendant claimed further that various factors had to be examined in each case before a lessee was entitled to a return of the security deposit, including the following: the lease itself, any liability for damage to the vehicle, excess mileage on the vehicle, and any other lease charges incurred by the individual lessee. These factors, the defendant asserted, destroyed the possibility of class treatment for the security deposits in the plaintiff's putative class. The defendant contended further that, because the State laws varied greatly concerning the right to interest on security deposits and on the method of maintaining them, the plaintiff could not show any common issue of

law as well. Reversing the judgment of the trial court which denied certification of the plaintiff's claim for a class action, the court on review found that the record and the allegations in the plaintiff's complaint demonstrated that, at that time at least, the questions of fact and law did predominate over any individual questions. The common questions of fact and law presented, the court stated, were: whether the defendant could lawfully withhold the security deposits at the termination of the auto lease in the absence of a written request by the lessee for a return of the money; whether the defendant was required legally to pay interest on the security deposits during the period they were held by the defendant; and whether the defendant could legally commingle the security deposits with its other funds during the time in question. The court noted further that it was not persuaded by the defendant's argument that the auto leases were individually negotiated, particularly as they related to security deposits, or that any individualized nature of these leases destroyed the basis for a class action:

> "From the allegations and the evidence presented in the case below, it is clear that the lease provisions relating to the security deposits were similar in form to the provisions in all of Hertz' other auto leases. Thus, P&W has alleged a scenario in which a class action is an especially appropriate procedure to resolve such questions. Furthermore, the allegations of P&W are supported by the undisputed evidence in the record which establishes that Hertz had a policy to retain security deposits after termination of the lease, unless the lessee requested the return of the deposit in writing. P&W's allegations concerning the security deposit provisions, the interest, and the commingling are common to all of Hertz' leases, and Hertz has offered no evidence to dispute these assertions." *Purcell*, 175 Ill. App. 3d at 1077, 530 N.E.2d at 1000.

In the instant case, unlike *Key*, there is evidence in the record to suggest that the experience of the plaintiffs was representative of a class that would include all agents who had had accounts reassigned in blocks by the defendants during the time in question, not "to better serve a policyholder" but in order to finance new agents or to attempt to coerce the agents to sell more life insurance, which was more profitable to Country Companies than was the sale of casualty insurance, all in violation of the form agreement between the agents and Country Companies. The plaintiffs argue, we think correctly, that contrary to the defendants' assertion,

> "there will be no need to have individual inquiries into dealings between particular agency managers and its agents, actual per-

formance by the agent, market factors existing in each county in Illinois, the needs of individual insureds, the economic circumstances of each individual agent, and the state of mind of each agent and agency manager. These are only issues which the Defendants may wish to raise as to certain individual class members."

The plaintiffs argue that in both *Miner* and *Purcell* liability to the class turned on a common uniform event or a common practice uniformly applied and that the present case concerns a uniform practice, namely, the uniform scheme or plan carried out statewide by the defendants to increase their sales force by arbitrarily taking blocks of accounts from existing agents and reassigning them to finance new agents. We consider the nature of the individual questions asserted by the defendants here not unlike those urged by the defendant in *Purcell*, in which the court reversed the judgment of the trial court denying certification of the plaintiff's claim for a class action. Therefore, we find *Purcell* particularly instructive. The record and the allegations of the plaintiffs in their amended complaint reveal that plaintiffs' claims center upon the defendants' statewide plan and practice of reassigning blocks of accounts from existing agents, not to better serve a policyholder, but to finance new agents or to coerce existing agents to meet certain production requirements not included in their contracts with the defendants. We conclude that these are questions of fact and law common to the class that predominate over questions affecting only individual members of the class. Hence, the requirement of section 2—801 pertaining to predominating common questions of fact or law has been met.

■ With respect to the third requirement of section 2—801, that the representative parties will fairly and adequately protect the interest of the class, the defendants urge that the plaintiffs are not adequate class representatives because of two inherent conflicts with members of the purported class. First, defendants say, some of the plaintiffs benefited from the practice of reassigning policies from one agent to another because they had a greater number of policies assigned to them than were reassigned to others while other agents were damaged by the same practice; thus, these plaintiffs have conflicting interests with those agents who had a net loss from this practice. Second, defendants argue, the named plaintiffs are all former agents of the Country Companies and cannot fairly and adequately represent the interests of the large number of present agents included within the certified class. There must be no conflict of interest between the representative and the represented class members. (*McCabe*

*v. Burgess* (1978), 57 Ill. App. 3d 450, 373 N.E.2d 327, *rev'd in part on other grounds* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) However, the trial court expressly found that there is no conflict apparent at this time between members of the proposed class and that, although several plaintiffs may seek recovery of commissions from the same account, they seek, not reassignment of a particular account, but money damages, not from other agents, but from the defendants, whose financial viability appears not to be threatened by this litigation. The record does not suggest that the finding of the trial court in this regard was in any way unwarranted. Under the circumstances, there does not appear to be an inherent conflict between former and present agents of the defendants that would defeat certification of the class. Thus, we must disagree with the defendants' contention that the third requirement of section 2—801 has not been satisfied.

 ■ Finally, the defendants challenge the trial court's certification of the class because, in contravention of the requirements of section 2—802, they say, a prejudicial delay in certifying the class occurred. The plaintiffs maintain that there has been no prejudicial delay in the certification of the class. Section 2—802(a) provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class." (Ill. Rev. Stat. 1989, ch. 110, par. 2—802.) Although the defendants and the plaintiffs make numerous citations to the record in support of their respective positions, the apparently abbreviated record provided to us for review does not contain certain cited portions and is, as a consequence, inadequate to make the determination defendants ask us to make. The burden is on the party who brings a cause to a reviewing court to present a record that fairly and fully presents all matters necessary and material for a decision of the questions raised. (*Interstate Printing Co. v. Callahan* (1974), 18 Ill. App. 3d 930, 310 N.E.2d 786.) Accordingly, we make no determination concerning the merits of this contention.

 In the instant case the trial court made numerous findings pertaining to the certification of the class, which are supported by the record. The trial court neither applied impermissible legal criteria nor abused its discretion in certifying the class. Hence, we may not disturb its certification.

 As we have indicated, the plaintiffs have proposed another definition of the class, which they consider to be more precise than that of the trial court and which they ask us to adopt. Their proposed definition includes numerous subclassifications. However, the trial court

may during the course of this proceeding adopt a system of subclassification if it perceives a need to do so. (See *Purcell*, 175 Ill. App. 3d 1069, 530 N.E.2d 994.) Accordingly, we decline to modify the trial court's admittedly proper definition of the class.

We turn now to the plaintiffs' contention that the trial court erred in finding that block reassignment of an agent's accounts was not a *per se* violation of the 1970 contract between the defendants and agents. The plaintiffs argue that the words "a policyholder" in the contract are singular in nature and that "the express language of the contract allows for reassignment on an individual basis only when there has been a determination that *a particular policy holder* would be better served by another agent." (Emphasis in original.) Thus, plaintiffs urge, the contract does not provide for block transfers of accounts. Plaintiffs ask us to rule that "a policyholder" is singular and, for that reason, does not provide for block transfers of accounts. Concerning the question of block reassignments, the trial court found as follows:

> "The plaintiffs' contention that the contractual provision to better serve 'a' policy holder forbids block reassignments of accounts is without merit; the distinction suggested ('a policy holder' not 'policy holders') is in fact a distinction without a difference. *** The ultimate question(s) is (are) not to be determined upon plaintiff's [*sic*] restricted, convoluted, belated interpretation of 'a policy holder' but on the law and the evidence of the case; acceptance of plaintiffs' suggested interpretation would be tantamount to directing a verdict for plaintiffs on the block reassignment issue *** that issue (whether such reassignments were made to better serve the policy holders) should be resolved by trier of facts."

We agree with the trial court that an assignment of more than one account at a time is not a *per se* violation of the contract. Plainly, the determination could be made at any one time that reassignment of more than one of an agent's accounts would better serve the policyholders in question. The reason for the reassignment, not the fact that more than one account is reassigned at a time, is, we think, determinative.

Affirmed.

HARRISON and WELCH, JJ., concur.