CLINTON KENNEDY *et al.*, Indiv. and on Behalf of a Class of Similarly Situated Persons, Plaintiffs-Appellees, v. COMMERCIAL CARRIERS, INC., Defendant-Appellant.

First District (2nd Division)   No. 1—97—0563

Opinion filed December 30, 1997.

GORDON, J., specially concurring.

McDermott, Will & Emery, of Chicago (John T. Schriver and Steven F. Pflaum, of counsel), for appellant.

Joel M. Hellman, Robin B. Potter, of Potter & Schaffner, P.C., and Charles Pressman, P.C., all of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Clinton Kennedy, Dale Long, Kenneth H. Chandler and Harold Sutphin, brought a class action on behalf of certain union truck drivers against their employer, Commercial Carriers, Inc. (CCI), alleging that CCI had breached its equipment leases with each plaintiff and class member. After a jury trial, the trial court entered judgment in favor of plaintiffs and against CCI in the amount of $2,313,142.72. CCI appeals from that judgment and from the trial court's order denying CCI's posttrial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. On appeal, CCI contends that the trial court erred by denying CCI's request, pursuant to section 2—1201(c) of the Code of Civil Procedure (735 ILCS

5/2—1201(c) (West 1992)), for separate verdict forms that CCI alleges would have enabled the jury to find in favor of the plaintiffs on only one of the two leases at issue.

BACKGROUND

CCI is an automobile transporter that hauls vehicles on behalf of manufacturers and importers. Plaintiff class representatives were owner-operators who leased their respective tractors or tractor-trailers to CCI for use in CCI's business of transporting automobiles. CCI and the owner-operators entered into lease agreements that supplemented other terms of employment. The plaintiff class consisted of 97 owner-operators who signed certain forms of those leases. The lease agreements required CCI to pay rent to the owner-operators in the amount of 65% of CCI's gross revenue. Plaintiffs brought breach of contract claims under two different versions of the lease which were attached to the complaint as exhibits A and B, respectively.[1] Clinton Kennedy's lease, attached as exhibit A to the complaint, provided that rents were to be calculated as follows:

> "Company [CCI] agrees to pay Lessor [owner-operator] as rental compensation for the use of the leased motor vehicles and motor vehicle equipment, an amount earned in use of Lessor's vehicle *equal to the percentage of the gross revenue accruing to the Company* and exclusive of delivery charges where Lessor's vehicle does not make final delivery, based upon gross billings to customers, hereinafter set forth less driver's wages and vacation pay, at the union contract rates, less the transportation cost attributable thereto." (Emphasis added.)

Harold Sutphin's lease, attached as exhibit B to the complaint, provided a separate basis upon which rents were to be calculated and provided as follows:

> "[T]he COMPANY agrees to pay the LESSOR, as rental compensation for the use of the Vehicle, an amount *equal to the percent of the gross revenue (based upon billings to customers), derived by line-haul revenue only* as herein stated below, and exclusive of delivery charges where the Vehicle does not make final delivery less driver's wages and vacation pay, at the union contract rates, less the transportation cost attributable thereto." (Emphasis added.)

---

[1]The circuit court certified a single undivided class comprised of "all owners of vehicles who have leased their vehicles to [CCI] pursuant to leases substantially in the form of attached Exhibits A and/or B to the Complaint, which leases were executed or in effect at any time during the period January 1, 1981 to December 31, 1988."

Plaintiffs alleged that CCI breached its equipment leases by reducing the gross revenues upon which plaintiffs' rents were calculated by amounts that CCI referred to as "ancillary charges" received by CCI. The ancillary charges covered costs associated with the assimilation of shipping and delivery information and ranged from $2.40 to $5.25 per delivery.

At trial, plaintiffs' expert, Leland Stewart Case, an economic transportation consultant, explained that CCI included ancillary charges in the rates it charged to customers. Those rates were published in CCI's tariffs. Case explained that tariffs are documents that provide the terms and conditions under which a carrier such as CCI will make shipments and the prices the carrier will charge for the shipments. It was Case's opinion that the gross revenues referred to in the lease agreements included ancillary charges that had been charged to the customers.

On the other hand, CCI's expert, Mitchell Haller, testified that line-haul revenue, referred to in the lease attached to the complaint as exhibit B, is different from revenue of a motor carrier because there can be revenue of a motor carrier that is not attributable to line-haul service. Haller defined the term "line haul" as a commonly used term in the trucking industry that constitutes part of a full transportation service that is the movement in a train or truck from the point of origin to the point of destination.

Plaintiffs presented the damages attributable to each of the 97 class members in a demonstrative exhibit that was admitted into evidence as plaintiffs' exhibit M1.

At the jury instruction conference, CCI tendered separate verdict forms for each lease, which would allow the jury to make separate findings of liability for each lease and assess separate damages for each lease. In addition, CCI proposed a jury instruction that instructed the jury to consider the leases separately, determine whether each lease required CCI to include ancillary charges in calculating the plaintiffs' compensation and, if necessary, determine the separate damages for each plaintiff under each lease respectively.

In response to CCI's proposed forms and instruction, plaintiffs' counsel argued that their exhibit, exhibit M1, did not provide separate calculations for each lease, that CCI did not provide an exhibit that would provide the jury with separate calculations and that the jury would become frustrated if it had to complete such calculations. Plaintiff also argued that CCI was effectively seeking to divide the class into two subclasses after all the evidence had been introduced, even though CCI had made no pretrial motion for the creation of subclasses. The trial court rejected CCI's verdict forms and accepted

plaintiffs' forms, which included a special interrogatory. The interrogatory provided:

"Do you find that, at the time the leases were executed, revenues should have been reduced by ancillary charges for purposes of calculating the rents owed to the plaintiffs and class members[?]"

The jury answered this interrogatory in the negative.

Plaintiffs' verdict form provided:

"If you find for plaintiffs and the class and against defendant for breach of the leases and for damages, then you should use Verdict Form A.

If you find for defendant and against plaintiffs and the class, then you should use Verdict Form B."

In finding for the plaintiffs, the jury used verdict form A, which provided:

"We, the jury, find for the plaintiffs and the class against defendant. We assess the damages in the sum of ***."

The jury returned a verdict in favor of the class and against CCI and found damages in the amount of $1,364,131.68. The trial court granted the class' motion for prejudgment interest and entered judgment in favor of the class in the amount of $2,313,142.72. CCI appealed.

OPINION

CCI argues that the trial court erred in denying CCI's request, pursuant to section 2—1201(c) of the Code of Civil Procedure (735 ILCS 5/2—1201(c) (West 1992)), for verdict forms that would have enabled the jury to consider the leases separately. Plaintiffs argue that the trial court did not abuse its discretion in rejecting CCI's proposed verdict forms and jury instruction because the materials were inconsistent with the posture of the case as a single-count class action. Plaintiffs further argue that, assuming *arguendo* that the class claims were theoretically severable, the trial court properly rejected CCI's proffered materials because they were misleading and therefore unacceptable.

■ The form of verdicts is a matter within the sound discretion of the trial court. *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1077, 631 N.E.2d 1246 (1994). The law regarding separate verdicts is clearly set forth in section 2—1201(c) of the Code of Civil Procedure and provides:

"(c) If there are several counts in a complaint, counterclaim or third-party complaint based on different claims upon which separate recoveries might be had, the court shall, on a motion of any party, direct the jury to find a separate verdict upon each claim." 735 ILCS 5/2—1201(c) (West 1992).

The joint committee comments to the original version of this section explain:

> "Separate verdicts are appropriate only when recovery on different demands is sought in the same complaint. Therefore, the words 'upon which separate recoveries might be had' have been added, making clear that the provision authorizing separate verdicts applies only to separate causes of action based upon separate transactions." Ill. Ann. Stat., ch. 110, par. 2—1201(c), Joint Committee Comments, at 4 (Smith-Hurd 1983).

Although there is some authority for the proposition that separate transactions *within* a single pleaded count may require separate verdicts (see, *e.g., In re Estate of Payton*, 79 Ill. App. 3d 732, 740, 398 N.E.2d 977 (1979)), CCI has cited no authority for the proposition that separate verdicts are appropriate in a class action where there is only one class and no subclasses. We believe that the use of separate verdicts in a class action is inappropriate, particularly in light of the special nature of a class action.

■ A class action is appropriate when there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class. See *Slimack v. Country Life Insurance Co.*, 227 Ill. App. 3d 287, 292, 591 N.E.2d 70 (1992). A common question must predominate over the individual questions that may be involved. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 17, 428 N.E.2d 478 (1981). Once the basic determination has been made that a predominating common question of fact or law exists, the fact that there may be individual questions will not defeat the predominating common question. *Miner*, 87 Ill. 2d at 17-18. However, if certain individual questions exist that may require individual determinations, these individual questions may be handled within subclasses, as long as the common issues predominate. *Slimack*, 227 Ill. App. 3d at 293; *Miner*, 87 Ill. 2d at 18.

■ After carefully reviewing the record in this case, we conclude that separate verdicts were not required. In the case *sub judice*, the trial court certified a single class without subclasses. CCI did not appeal the trial court's certification of the class and does not argue on appeal that the trial court should have created subclasses. Rather, relying on *Caton v. Flig*, 343 Ill. App. 99, 98 N.E.2d 162 (1951), CCI argues that separate verdicts should have been allowed. *Caton*, however, is distinguishable from the instant case.

In *Caton*, three individual plaintiffs who occupied separate apartments under separate leases brought suit against the defendant landlord for overcharges in rent for their respective apartments. 343 Ill. App. at 100. Defendant's petition to the court for separate trials

as to each plaintiff was overruled. The cause went to trial as one proceeding before a jury and resulted in a verdict for the plaintiffs for a lump-sum judgment for all plaintiffs. 343 Ill. App. at 100. The appellate court reversed the trial court's entry of judgment and held that the single verdict and judgment was improper because each plaintiff had a separate and distinct cause of action for separate claims of damages for different amounts based upon separate and distinct transactions. 343 Ill. App. at 101.

In the instant case, however, the single class proceeded to trial on a single count. The single count addressed the sole issue, which was a common question of law to all the class members as to whether CCI should have reduced gross revenues by ancillary charges for the purposes of calculating rents to the plaintiffs. Since the single count was not based on different demands upon which separate recoveries might be had, or separate causes of action based upon separate transactions, section 2—1201(c) is inapplicable and separate verdicts were not required. Since there are clearly no separate causes of actions based upon separate transactions within a single class[2] , we hold that, where there is a single class without subclasses, separate verdicts are inappropriate. Therefore, the trial court did not err in refusing CCI's separate verdict forms.

Moreover, we also note that, if a jury's answer to a special interrogatory is inconsistent with a general verdict, the special interrogatory controls the outcome of the case. *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 449, 676 N.E.2d 985 (1997); see also *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 59, 666 N.E.2d 818 (1996). Here, the jury specifically found in the special interrogatory that revenues should not have been reduced by ancillary charges for the purpose of calculating the rents owed to the plaintiffs under either lease. Thus, even if we were to find error in the jury's general verdict, we would still affirm the judgment based on the jury's answer to the special interrogatory.

■ Assuming *arguendo* that separate forms were appropriate, we agree with plaintiffs that CCI's proposed jury instruction was misleading and improper. While a party is entitled to have correct instructions submitted to the jury, the trial court's refusal to give incorrect instructions is not error. *Sweeney v. Max A.R. Matthews & Co.*, 46 Ill. 2d 64, 69, 264 N.E.2d 170 (1970). See also *Kinka v. Harley-Davidson Motor Co.*, 36 Ill. App. 3d 752, 758, 344 N.E.2d 655 (1976). Moreover, a party who fails to meet its obligation to tender a proper instruction cannot complain that its instruction was refused. *Sweeney v. Matthews*, 94 Ill. App. 2d 6, 30 (1968).

---

[2]See generally *Miner v. Gillette Co.*, 87 Ill. 2d 7, 428 N.E.2d 478 (1981).

■ In the instant case, CCI proposed the following instruction:

"The plaintiffs have the burden of proving the following proposition with respect to each form of the leases at issue:

That the leases between the defendant and the plaintiffs required the defendant to include ancillary charges in calculating the plaintiffs' compensation.

If you find from your consideration of all the evidence that the proposition required of the plaintiffs has been proved with respect to the leases in the form of both Plaintiffs' Exhibit [A] and Plaintiffs' Exhibit [B], then you must determine the damages sustained by all the plaintiffs. If, on the other hand, you find from your consideration of all the evidence that the proposition the plaintiffs are required to prove has been proved only with respect to one of the two leases, then you must only determine the damages sustained by the plaintiffs to which that form of lease applies. Finally, if you find from your consideration of all the evidence that the proposition the plaintiffs are required to prove has not been proved with respect to *either* Plaintiffs' Exhibit [A] *or* Plaintiffs' Exhibit [B], then your verdict should be for the defendant and you must not consider any other issues in the case." (Emphasis added.)

Despite CCI's insistence at oral argument, it is our view that this instruction, particularly its last sentence, is misleading and improper. The use of the terms "either" and "or" would have required a general verdict for CCI even if the jury was to find against CCI on only one of the leases. Accordingly, the trial court's refusal to give this instruction was not error.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, J., concurs.

JUSTICE GORDON, specially concurring:

I concur with the majority that this appeal should be affirmed. However, my concurrence is predicated upon the second reason advanced, namely, that the proffers of the verdict forms were misleading and the court was therefore justified in rejecting them. I am not persuaded, however, that the defendant is bound to a single verdict because only a single class was certified. Section 2—1201 of the Code of Civil Procedure (735 ILCS 5/2—1201 (West 1992)), which provides for separate verdict forms, does not purport to interface with the class action provisions and section 2—801 *et seq.* of the Code (735

ILCS 5/2—801 *et seq.* (West 1992)). Moreover, in this case, plaintiff did request two separate subclasses, which the court denied. While the failure to certify two subclasses would create administrative problems in the event two separate verdict forms were submitted and resulted in disparate verdicts, the prospect of such administrative difficulty would not justify ignoring the separate verdict requirement under section 2—1201. Under the reasoning of the majority, two wrongs would make a right in that a wrongful failure to certify two classes would justify a wrongful failure to submit separate verdicts under section 2—1201. I would rather adhere to the notion that if having been wrongfully denied the certification of two subclasses, a party can still prevail at the verdict stage, if two verdict forms are otherwise necessary. However, since appellant failed to properly tender the two verdict forms, the court was justified on that ground alone to reject their tender.